05-1642-CBS

## AFFIDAVIT OF DAVID M. DITULLIO

David M. DiTullio, being duly sworn, deposes and states as follows:

1. I am a Special Agent with the U.S. Drug Enforcement Administration ("DEA") and I have been so employed for approximately 4 years. I have received specialized narcotics training from DEA and I have been involved in numerous narcotics investigations involving the use of various investigative techniques, including controlled purchases of narcotics, the use of confidential informants and other cooperators, physical surveillance, electronic surveillance, financial investigations, narcotics-related arrests and the execution of dozens of narcotics-related search and arrest warrants. During the course of my law enforcement career, I have participated in investigations relating to the distribution and sale of controlled substances including cocaine, cocaine base ("crack"), ecstasy ("MDMA"), oxycodone, heroin and marijuana. Since December 2002, I have been assigned to the DEA's Mobile Enforcement Team ("MET").

2. I submit this affidavit in support of an application for a complaint and warrants to arrest Donald WHITNEY and Nicholas RHEAULT on the basis of probable cause to believe that they knowingly and willfully conspired to possess with intent to distribute 3,4 Methylenedioxmethamphetamine, also known as

1

Ecstacy, a Schedule I controlled substance, (hereinafter referred to as "Ecstacy"), in violation of 21 U.S.C. § 846.

3. The information set forth in this affidavit is based on investigation conducted by this affiant and other law enforcement agents. This affidavit does not contain every fact known to me with respect to this investigation. Rather, it contains those facts that I believe to be necessary to establish probable cause for issuance of the requested arrest warrants.

## BACKGROUND

4. I am participating in an investigation into the distribution of Ecstacy in Leominster, Massachusetts and the surrounding area. The investigation has involved agents working in an undercover capacity and posing as purchasers of Ecstacy. As shown below, RHEAULT and WHITNEY have participated in the distribution of over 500 Ecstacy pills and the attempt to distribute 1,000 Ecstacy pills.

## THE INSTANT INVESTIGATION

### UC Meeting with WHITNEY

5. November 2, 2004, an undercover DEA Agent ("UC") called a telephone number a confidential source ("CS") had provided the UC for one DONALD WHITNEY. UC began negotiating with WHITNEY to purchase 250 ecstasy tablets. WHITNEY told UC that his organization conducts $1.2 million worth of narcotics business per month in the Leominster area, and that WHITNEY deals Ecstasy

with different stamps, including "sunflowers, white Rolex and dolphins." He further told UC that he had 250 Ecstacy pills he needed to sell. UC agreed to meet WHITNEY and obtain a sample of the Ecstacy to determine its quality. The meeting was arranged for November 3, 2004, at the Outback Steakhouse in Leominster (hereafter, the "Outback").

6. In anticipation of the meeting, agents instructed CS to pickup WHITNEY at his residence, which Massachusetts Registry of Motor Vehicles records and surveillance indicate is a multi-family dwelling at 30 Parker Road in Lancaster.

7. On November 3, 2004, agents conducting surveillance at Cumberland Farms on Route 70 in Lancaster saw WHITNEY enter the passenger side of grey minivan operated by CS. Agents followed the minivan. CS drove to 122-124 Middle Street, Leominster. RHEAULT uses an apartment on the second floor of that address. At 122-124 Middle Street, agents saw WHITNEY exit CS's minivan, enter the rear of 122-124 Middle Street. It was not until an hour later, that WHITNEY arrived at the Outback in the minivan driven by CS.

8. At the Outback, after CS introduced UC to WHITNEY, WHITNEY handed UC an Ecstasy tablet. WHITNEY stated that he had difficulty retrieving the Ecstacy tablet because "his guy" was passed out when WHITNEY went to his residence. As a result, WHITNEY was unable to open the safe in which the Ecstacy was

3

secured. WHITNEY told the UC that he eventually contacted "his guy's" sister to open the safe and retrieve the sample from the Ecstasy stash. I believe that "his guy" is a reference to NICHOLAS RHEAULT, a source of Ecstacy distributed by WHITNEY, and that the safe is kept in the apartment RHEAULT rents on the second floor of 122-124 Middle Street in Leominster.

9. In addition, during the meeting at the Outback, UC negotiated a price of $10.75 per tablet for the 250 Ecstasy tablets. In this regard, WHITNEY told UC that he was obtaining the tablets for $9.00 per tablet from his source. WHITNEY further told UC that if UC purchased larger quantities in the future, the price per tablet would decrease. WHITNEY told UC that he could provide UC with at least 250 Ecstasy tablets per week and regular purchases of such a quantity would enable UC to receive a lower price per tablet.

10. At the conclusion of the meeting, UC and WHITNEY agreed to meet the next day in the parking lot of the Outback Steakhouse in order to consummate the 250 Ecstasy tablet transaction.

11. The DEA lab analyzed the pill WHITNEY provided on November 3, 2004, and determined that it contained 3,4-methylenedioxymethamphetamine with a net weight of .16 grams.

**November 4, 2004 250 Pill Deal**

12. On November 4, 2004, agents conducting surveillance in the vicinity of 30 Parker Road, Lancaster saw WHITNEY enter the

4

passenger side of the minivan operated by CS. Agents followed the minivan to 122-124 Middle Street, Leominster. When CS parked, WHITNEY entered the rear door to that address and after a few minutes returned to CS's minivan. CS drove to the Outback.

13. At 122-124 Middle Street, agents also saw a male, later identified as NICHOLAS RHEUALT, exit the same door as WHITNEY had entered, enter a brown 2003 Infiniti with Massachusetts license plate 34XJ12, which was parked at 122-124 Middle Street. RHEAULT followed WHITNEY and CS to the Outback in the Infiniti.

14. WHITNEY and CS arrived at the Outback a short time later. At approximately 2:10 p.m., WHITNEY exited the CS's minivan and entered the UC vehicle. Inside the UC's car, WHITNEY handed UC a clear plastic bag containing the 250 Ecstasy tablets, and UC handed WHITNEY $2690 as payment for the Ecstacy. WHITNEY counted the money. When UC asked WHITNEY for a better price on future deals, WHITNEY stated that he would talk to his source.

15. As this transaction occurred, agents saw RHEAULT in the brown Infiniti circling the parking lot and the area in which the UC car was parked.

16. After WHITNEY left in CS's car and RHEAULT had left, UC noticed that the bag of Ecstacy pills contained a smaller bag of off-white powder. UC telephoned WHITNEY to ask about the powder. WHITNEY stated that he did not know what it was, but stated that he was with his source and would ask him. UC then heard WHITNEY

5

call: "Hey RHEAULT". WHITNEY returned to the telephone and reported that "his guy" had mistakenly included the powder with the 250 pills, that WHITNEY was not sure what the substance was, but that UC should keep it.

17. The DEA lab analyzed the pills and determined that they contained 3,4-methylenedioxymethamphetamine with a net weight of 43.8 grams. The DEA lab also analyzed the bag of off-white powder and determined that it contained 3,4 methylenedioxymeth-amphetamine with a net weight of .23 grams.

**UC Purchase on November 10, 2004**

18. On November 8, 2004, WHITNEY spoke to UC on the telephone and asked if UC needed more Ecstacy. WHITNEY stated that "we" have new pills, "yellow pills with the @ symbol on them". UC asked for a better price and WHITNEY responded that he would have to ask his source. On November 10, 2004, during a telephone call with UC, WHITNEY stated that his source was getting Ecstasy for $7.75 per tablet and charging WHITNEY $9.00 per tablet. UC arranged to meet WHITNEY later on November 10.

19. On November 10, 2004, UC drove to Lancaster and found WHITNEY waiting at Cumberland Farms on Route 70. WHITNEY entered the UC car and they traveled to the Victory Supermarket in Leominster. During the ride, WHITNEY said that his source received 1,000 Ecstasy tablets at a time, and kilograms of cocaine from the same supplier. WHITNEY told UC that his drivers

license was suspended because WHITNEY crashed his car into a gas station in Lancaster while high on Ecstacy. WHITNEY instructed UC to drop off WHITNEY at the Victory Supermarket, and WHITNEY would walk to his supplier's apartment to obtain the 250 Ecstacy tablets.

20. Upon arrival at Victory Market, UC handed WHITNEY $2500, which WHITNEY counted and then returned to the UC. WHITNEY then left the UC car. WHITNEY walked to 122-124 Middle Street and waited in the driveway. A short time later, agents saw RHEAULT drive the brown Infiniti through the Victory Supermarket parking lot en route to 122-124 Middle Street, where he parked. WHITNEY and RHEAULT entered 122-124 Middle Street together. A short time later, WHITNEY exited that address through the same door he had entered, walked to the UC car and entered. Inside, WHITNEY delivered three clear plastic bags containing 254 Ecstasy tablets. WHITNEY told UC that he had to deliver the $2500 to his source. He exited the UC car with the payment, walked to 122-124 Middle Street and entered. A short time later, WHITNEY exited that address and returned to the UC, who drove WHITNEY back to Lancaster.

21. The three bags of pills were submitted to the DEA lab and determined to contain 3,4-methylenedioxymethamphetamine with a net weight of 45.1 grams.

### UC Purchase of Ecstasy on December 2, 2004

22. On November 16, 2004, WHITNEY told UC that his source might be able to sell him 1,000 Ecstasy tablets at $7.00 each.

23. On December 1, 2004, during discussion about a 1,000 Ecstacy tablet purchase, UC asked if he could meet WHITNEY'S source to negotiate a better price. WHITNEY said his source was willing to meet UC and they arranged to meet the next day at a restaurant in Fitchburg.

24. However, the following day, WHITNEY told UC that his supplier was "sick from partying too much", and could not meet, but that WHITNEY could complete the sale of 1,000 Ecstasy pills. They agreed to meet later that day.

25. UC traveled to Clinton with another undercover agent ("UC2"), where WHITNEY was waiting. WHITNEY entered the car with the undercover agents and instructed UC to drive to the Victory Supermarket in Leominster. During the ride, WHITNEY stated, among other things:

- his source had just gotten rid of a lot of "double stack" blue dolphin Ecstasy tablets;

- on December 1, 2004, WHITNEY had to back up his friend who was "ripped off" by "some Mexicans" for marijuana and as a result of this was beaten with a golf club and had a laser sighted rifle pointed at him; and

- that WHITNEY once had "Hells Angels Motorcycle Club" members take care of a problem he had with "some kid".

26. Upon arrival at the Victory Supermarket, WHITNEY used a UC telephone to call 978-767-1745. According to Nextel

8

subscriber records, this number is assigned to a cellular telephone listed to Paul Bilodeau at 124 Middle Street, Apartment # 2, Leominster. WHITNEY spoke on the telephone and later reported that his supplier told him to call back in 10 minutes. WHITNEY told UC that his source was nervous because UC was buying 1,000 pills and his source wanted to make sure it was legitimate and that WHITNEY counted the money.

27. UC handed $7,000 to WHITNEY to count. After counting the money, WHITNEY used a UC telephone to call the same telephone number. UC and UC2 heard WHITNEY say into the telephone, in substance, "I counted it twice. It's all there. Everything is good".

28. At approximately 2:54 p.m., WHITNEY exited the UC's car saying he was going to his supplier's apartment to get the 1,000 Ecstacy tablets. WHITNEY walked to 122-124 Middle Street and entered. Moments later, agents saw RHEAULT exit 122-124 Middle Street and open the door of a new black 2004 Infiniti that had the same Massachusetts tags as the brown 2003 Infiniti, 34XJ12. RHEAULT retrieved a package from the door panel of the car and returned to the residence. A short while thereafter, WHITNEY exited 122-124 Middle Street carrying a brown paper bag. He approached the UC car. UC exited the UC car and WHITNEY handed the brown shopping bag to UC. UC entered another UC car and examined the contents of the bag. It contained a microwave

9

popcorn box containing ten clear plastic bags. One clear plastic bag contained 76 blue Ecstasy tablets stamped with a Rolex logo. The remaining nine plastic bags contained Aleve aspirin tablets.

29. While UC was examining the tablets, WHITNEY had a conversation with UC2 and asked if UC2 had access to guns. WHITNEY stated that his current source had a 9mm Luger with a laser sight on it.

30. As the UC counted pills and WHITNEY spoke with UC2, surveillance agents saw RHEAULT exit 122-124 Middle Street with another male. They entered the black Infiniti and RHEAULT drove to an area overlooking the Victory Market. They exited the Infiniti and watched the area in which the undercover agents were located.

31. As WHITNEY's conversation with UC2 continued and RHEAULT and his companion watched, UC left the car he was in and entered the UC car where WHITNEY and UC2 were seated. UC told WHITNEY what UC had discovered: that there were only 76 ecstasy tablets in one package and the rest of the packages contained aspirin. WHITNEY stated that he had nothing to do with this and asked UC if he could go back to his supplier. UC said he wanted to speak to WHITNEY's source.

32. WHITNEY exited the UC car, walked alone toward 122-124 Middle Street. As WHITNEY walked, he was picked up by the black Infiniti, operated by RHEAULT. Agents saw the Infiniti travel a

short distance and then saw WHITNEY exit the vehicle and walk back to the UC car.

33. WHITNEY returned to the UC and reported that his supplier was "wigging out on his guy right now". WHITNEY told UC that his source wanted WHITNEY to grab all of the aspirin tablets and bring them back to his source so he could confront "his guy". WHITNEY exited the UC car. WHITNEY told UC that his supplier wants to bring WHITNEY directly to "his guy" and have his guy count out 1,000 real pills. UC agreed to give WHITNEY $500 for the 76 ecstasy tablets and to return one of the nine bags of aspirin. At this time, WHITNEY exited the UC car with one bag of aspirin, walked to 122-124 Middle Street and entered.

34. The 76 tablets with the Rolex logo were submitted to the DEA lab and determined to contain 3,4-methylenedioxymeth-amphetamine with a net weight of 17.9 grams.

**UC telephone conversations with RHEAULT**

35. On December 2, 2004, UC received a telephone call from RHEAULT. UC complained about WHITNEY's delivery of sham pills, noting that UC's good faith was obvious from the fact that he had let WHITNEY count the money. RHEAULT stated that he was a business man and that he has been doing business for a few years. RHEAULT acknowledged that it was his mistake on the 1,000 Ecstasy pill transaction. RHEAULT told UC that he would like to re-establish the deal for the 1,000 tablets. RHEAULT stated that

the next deal would be handled properly. RHEAULT also told UC that he could sell 10 pounds of marijuana per week for UC and that they should get together and talk. RHEAULT provided UC with the telephone number of 978-767-1745, the same number WHITNEY had dialed from the UC telephone, and told UC that his "real" name was "Nick".

36. On December 7, 2004, UC contacted RHEAULT at 978-767-1745 to confirm a meeting to discuss the 1,000 Ecstasy tablet deal. RHEAULT stated that any time was good because he "does not work". UC and RHEAULT agreed to meet on December 9. RHEAULT proceeded to ask UC how much he could get per pound for 10 pounds of marijuana. UC responded $2900. RHEAULT told UC that he is already getting marijuana for $2600 per pound. UC told RHEAULT that he would contact him on December 9, 2004 to confirm the meeting.

37. After December 7, 2004, RHEAULT and WHITNEY rebuffed any attempts by UC to contact them.

## CONCLUSION

38. Based on the foregoing information, I submit that there is probable cause to believe that from in or about November 2004 to in or about December 2004, WHITNEY and RHEAULT conspired to distribute Ecstasy (3,4 methylenedioxymethamphetamine), a Schedule I controlled substance, in violation of 21 U.S.C. s. 846 and 841 (a)(1).

39. WHEREFORE, your affiant requests that the Court issue a criminal complaint charging DONALD WHITNEY and NICHOLAS RHEAULT with conspiracy to distribute Ecstacy and warrants for the arrests of WHITNEY and RHEAULT so that they might be arrested and dealt with according to law.

*David M. DiTullio*
David M. DiTullio
Special Agent
U.S. Drug Enforcement Administration

Subscribed and sworn to before me this 1st day of February, 2005.

*Charles B. Swartwood, III*
Charles B. Swartwood, III
Chief United States Magistrate Judge